UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRIAN TURNER,

    Plaintiff,

    v.

OCEDON RESTAURANT GROUP, L.L.C.,

    Defendant.

Case No. 2:13-cv-1132
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for summary judgment (ECF No. 25), Plaintiff's memorandum in opposition (ECF No. 30), Defendant's reply memorandum (ECF No. 33). For the reasons that follow, the Court **GRANTS** the motion.

### I.   Background

In December 2012, Plaintiff, Brian Turner, began working as a crew member at a Burger King restaurant owned by Defendant, Ocedon Restaurant Group, LLC. Plaintiff asserts that during his employment, he was sexually harassed by Daniel Carnes. Plaintiff asserts that he reported the alleged harassment to his manager, Vince Pannell, on February 20, 2013, when he showed Pannell a recording of Carnes flashing his tongue/licking his lips at him. Pannell asserts that he thought that the recorded incident was related to a previous argument between Plaintiff and Carnes over the distribution of duties and that Plaintiff was trying to get Carnes fired. He denies that Plaintiff told him that Carnes was sexually harassing him or otherwise acting inappropriately.

Plaintiff then filed a charge of discrimination with the Ohio Civil Rights Commission in

1

March 2013.  That charge, which contained different allegations, stated:

> Starting from December 2012, Daniel sexually harassed me.  Every time he saw me at work, he said to me he [*sic*] "you look nice" "want to take you to my home", [*sic*] "You look like my x-boyfriend" and he several times smelled my cloth [*sic*].  He also said to me "I want to see you in C2 cloth", [*sic*] which means he wanted to see me naked.  Several times he blew kisses to me.

(ECF No. 25-12, at Page ID # 262.)  The charge also stated that Plaintiff complained about the alleged harassment to Defendant, that Defendant took no action, and that the harassment did not stop.  Plaintiff further stated in the charge that due to the alleged harassment, he did not feel like going to work when the alleged harasser was scheduled to work.

When Defendant learned of the charge, it conducted an investigation.  Defendant's then President of Operations, Bruce Zurek, consulted the company's human resources department and learned that no previous complaints of sexual harassment at the restaurant existed.  Zurek instructed Defendant's District Manager, Tony Diaz, to obtain statements from various interviewed employees.  When interviewed, Carnes stated that the tongue flashing/lip licking incident has occurred approximately six weeks previously when Plaintiff and Carnes had been working.  Carnes "was being funny and acting gay" when Plaintiff asked him to make a funny face, which Plaintiff recorded.  (ECF No. 25-15, at Page ID # 284.)  Carnes stated that he later apologized to Plaintiff in case he had offended Plaintiff, but that Plaintiff has since called him a derogatory term for a homosexual despite Carnes being a heterosexual.  Numerous employees denied having any knowledge of any sexual harassment by Carnes of Plaintiff.  When Zurek telephone Plaintiff to discuss the allegations, Plaintiff declined to speak with him and directed Zurek to contact Plaintiff's legal counsel.  Plaintiff did speak with Diaz, however, and indicated that Carnes had called him a number of names that Plaintiff had not reported because he thought

2

Carnes would stop. Zurek eventually concluded that there no evidence to support Plaintiff's sexual harassment allegations against Carnes. Defendant transferred Carnes to another Burger King location on March 15, 2013, and placed both Carnes and Pannell on Performance Improvement Plans.

Plaintiff continued to work for Defendant until September 15, 2013, when Defendant's Area Business Manager, Jacob Yaden, made the decision to terminate Plaintiff's employment after Plaintiff was 45 minutes late for his shift. Plaintiff subsequently filed the instant action in November 2013. In a two-count complaint, he asserts claims for sexual harassment and retaliation, both under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (ECF No. 1 ¶¶ 7-24.) Defendant has filed a motion for summary judgment on both claims. (ECF No. 25.) The parties have completed briefing on the motion, which is ripe for disposition.

## II.     Request for Oral Argument

In its briefing, Defendant has requested oral argument on its motion for summary judgment. Pursuant to the Local Civil Rules, parties may apply to the Court for oral argument if "oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." S.D. Ohio Civ. R. 7.1(b)(2). The local rule also provides that "[i]f the Court determines argument or a conference would be helpful, the Court will notify all parties." *Id.* Whether to grant or deny a request for oral argument is thus left to the sound discretion of the trial court. *Whitescarver v. Sabin Robbins Paper Co.*, No. C–1–03–911, 2006 WL 2128929, at *5–6 (S.D. Ohio July 27, 2006). Because the Court finds that oral argument is not essential to the fair resolution of the summary judgment motion, this Court **DENIES** the request for oral argument.

3

### III.     Summary Judgment Motion

#### A.  Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

#### B.  Analysis

Plaintiff asserts a claim for sexual harassment under Title VII, which provides that

4

> [i]t shall be an unlawful employment practice for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . or to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . .

42 U.S.C. §§ 2000e-2(a)(1)-(a)(2).  Defendant argues that it is entitled to summary judgment on Plaintiff's sexual harassment claim under this statutory provision because Plaintiff cannot establish a *prima facie* case.

In order to establish a *prima facie* case for a hostile work environment sexual harassment claim, Plaintiff must show that (1) he was a member of a protected class; (2) he was subjected to unwelcome discriminatory harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable.  *Wierengo v. Akal Sec., Inc.*, 580 F. App'x 364, 371 (6th Cir. 2014).  Defendant argues that it is entitled to summary judgment on this claim because Plaintiff cannot establish that a hostile work environment existed or that employer liability exists.

The Sixth Circuit has explained that a hostile work environment exists where

> the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . . Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Virgilio v. Potter*, 59 F. App'x 678, 681 (6th Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993)) (internal quotes and citations omitted).  Defendant argues that the

5

purported "harassment" of which Plaintiff complains was not severe and pervasive enough, and this Court agrees.

The touchstone of a hostile work environment claim is proof that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). There is both an objective and a subjective prong to this standard. In other words, "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir. 1997) (citing *Harris*, 510 U.S. at 21–22). Consequently, the question before the Court is whether a reasonable person would have found Plaintiff's work environment to be hostile or abusive.

In answering this question, the Court must consider various factors including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Although the work environment as a whole must be viewed by the Court, including all alleged acts of harassment or abuse, if such acts are irregular and sporadic rather than continuous and frequent, it is much more difficult to prove a hostile work environment claim. *See id.* This is because "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Meritor Sav. Bank, FSB*, 477 U.S. at 67. For example, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted).

Necessarily construing all of the evidence in a light most favorable to Plaintiff, the Court concludes that the conduct complained of does not rise to the level of harassing or discriminatory conduct presenting a hostile work environment. The distinct incidents about which Plaintiff complains are often so discrete and are so lacking in severity that they cannot be regarded under the totality of the circumstances as permeating the workplace with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to affect Plaintiff as he claims to have been affected. Although Plaintiff may have indeed been subjectively upset, his subjective perspective is insufficient to salvage his claim. In another hostile work environment case, this Court explained why subjective perceptions of minor events fail to sustain a hostile work environment claim:

> This is not to say that Plaintiff was without any amount of cause to find the manner in which he was at times treated or the manner in which other employees interacted with him upsetting. But upsetting does not always equal unlawful. Plaintiff must recognize that Title VII does not exist to ensure that everyone who works together enjoys one another's company or personality. Title VII is simply not a general civility code. *See Faragher*, 524 U.S. at 788 ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' "). *See also Black*, 104 F.3d at 826 ("Title VII was 'not designed to purge the workplace of vulgarity' " (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir.1995))). Thus, the relatively meager instances of discourtesy or rudeness involved here cannot be confused with serious harassment or discrimination premised upon impermissible grounds such as gender. *See Faragher*, 524 U.S. at 787. While not excusing the treatment or behavior reflected in the evidence, the Court must nonetheless recognize that the instances of asserted impropriety do not amount to discriminatory changes in the terms and conditions of Plaintiff's employment. *See id.* at 788. There is simply no basis for linking any of the treatment about which Plaintiff complains to gender, and none of this conduct was severe and pervasive.

7

*Lott*, 2013 WL 2468351, at *8.  The same rationale applies here.

If Plaintiff's factual assertions are correct, Carnes made salacious comments to him, blew kisses to Plaintiff, and flashed his tongue/licked his lips at Plaintiff.  Such alleged conduct is similar to the conduct that failed to rise to the level of serve or pervasive conduct in *Rayford v. Illinois Central Railroad*, 489 F. App'x 1 (6th Cir. 2012).  In that case, a plaintiff asserted that a supervisor had made a sexually inappropriate comment to him and that three to four times week, co-workers made inappropriate comments to the plaintiff, calling him "sweet booty," telling him the supervisor "wanted to mix coffee with his cream," and that the supervisor "got a big dick for [the plaintiff]." *Id.* at 5.  The court of appeals held that no reasonable jury could have concluded that these comments rose to the level of a hostile and abusive work environment.

In the present case, the same result is mandated.  The alleged conduct here was not frequent.  It was relatively mild, albeit inappropriate.  The conduct was neither physically threatening nor humiliating.  And it cannot be said to have interfered with Plaintiff's work performance; although Plaintiff argues that it made him not want to work with Carnes, Plaintiff's work history indicates attendance issues when he was not scheduled to work with Carnes.  Thus, although Carnes' alleged conduct would certainly be creepy behavior, under the totality of the circumstances it does not rise to the level of sufficiently severe or pervasive conduct to present an objectively hostile work environment.  *See Eisenbaum v. Senior Lifestyle Corp.*, 560 F. App'x 496, 499 (6th Cir. 2014) (anatomical comments were not severe or pervasive but merely offensive utterances); *Stevens v. St. Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 630 (6th Cir.

2013) (unwanted or unsolicited comments and physical contact were inappropriate, but did not permeate workplace with discriminatory intimidation or ridicule).

Although Plaintiff may have often found the manner in which Carnes allegedly interacted with him distasteful or upsetting, Carnes' alleged conduct falls outside that which Title VII is designed to prevent. The conduct may be vulgar and it may fall far below a general standard of civility, but it does not rise to the level of violating Title VII. Thus, this Court reaches the same conclusion in this case that it did in another case:

> The relatively meager instances of discourtesy or rudeness involved here cannot be confused with serious harassment or discrimination premised upon racial or other impermissible grounds. *See Faragher*, 524 U.S. at 787. While not excusing the treatment or behavior reflected in the evidence, the Court must nonetheless recognize that the instances of asserted impropriety do not amount to discriminatory changes in the terms and conditions of [the plaintiff's] employment. *See id.* at 788.

*Winfield v. Gates*, No. 2:09-cv-244, 2010 WL 5014497, at *5 (S.D. Ohio Dec. 3, 2010). The Court therefore concludes that because Plaintiff cannot establish the fourth prong of his *prima facie* case for a hostile work environment sexual harassment claim, Defendant is entitled to summary judgment on this claim.

Even assuming for the sake of argument that Plaintiff can establish the fourth prong, Plaintiff's sexual harassment claim still fails on the fifth prong of employer liability. The analysis applicable to this last prong turns on whether Carnes was Plaintiff's coworker or Plaintiff's supervisor, in light of the Sixth Circuit's discussion of the different approach accompanying each possibility:

> An employer's liability for a hostile work environment depends in part on whether the harassment was committed by a coworker or supervisor. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). A plaintiff can establish

9

> liability based on a supervisor's participation in the harassment or the employer's negligence in discovering and remedying coworker harassment, or both. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 n.2 (6th Cir. 2013). If the employee alleges both as bases for liability, the court must separate the conduct. *See Williams*, 187 F.3d at 562.

*Wierengo*, 580 F. App'x at 371. It is therefore significant that although Plaintiff makes the unsupported assertion that Carnes was a manager, Defendant has presented an affidavit from an Ocedon owner that indicates:

> 3. Ocedon employs shift supervisors at each of its 29 restaurants in Ohio.
>
> 4. Shift supervisors do not have the authority to hire employees.
>
> 5. Shift supervisors do not have the authority to promote employees.
>
> 6. Shift supervisors do not have the authority to terminate employees.
>
> 7. In addition, shift supervisors have no role in determining employees' rate of pay or benefits.
>
> 8. In particular, Daniel Carnes, who worked as a shift supervisor, did not have the authority to hire, promote, or terminate any employees.
>
> 9. He did not have the authority to write up employees or place employees on performance improvement plans.
>
> 10. Likewise, he did not have the authority to determine any employee's rate of pay or benefits.

(ECF No. 26, at Page ID # 379.) There is no evidence supporting that Carnes was a supervisor in anything more than name only.

The Sixth Circuit explained why this is important in *Wierengo*. The court of appeals stated:

> Wierengo does not point to any evidence suggesting that any improper action was taken by a "supervisor," as that term applies to hostile-work-environment claims. " '[S]upervisor' is a term of art that denotes more than an

> individual with a higher rank, a superior title, or some oversight duties." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390–91 (7th Cir. 2010). Wierengo must provide evidence showing that [her alleged harassers] had the power to take "tangible employment action" against her. *See Vance v. Ball State Univ.*, ––– U.S. ––––, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013). Because she has not done so, we analyze her claim using the standard for coworker liability. *See Waldo*, 726 F.3d at 813 n.2; *Montgomery*, 626 F.3d at 390.
>
> Under this standard, Wierengo must establish that [the employer] knew or should have known of the harassment yet failed to take prompt and appropriate corrective action. *Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008). When an employer takes action to address known sexual harassment by coworkers, it can only be liable if " 'its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.' " *Id.* (quoting *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872–73 (6th Cir. 1997)).

*Wierengo*, 580 F. App'x at 371-72. Thus, because Plaintiff, like the plaintiff in *Wierengo*, has failed to provide evidence that Carnes had the power to take a tangible employment action against him, this Court must analyze his claim under the coworker liability standard. *See Newton v. Ohio Dep't of Rehab. & Corr.-Toledo Corr. Inst.*, 496 F. App'x 558, 563 (6th Cir. 2012).

The Sixth Circuit has stated that "[t]he act of discrimination by the employer in [a hostile work environment case] is not the harassment, but rather the inappropriate response to the charges of harassment." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005). Thus, "when the allegations of sexual harassment involve a coworker and the employer has fashioned a response, the employer will only be liable 'if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.' " *Id. See also Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 119 (6th Cir. 2003) ("If the harasser was merely the plaintiff's co-worker, the employer will be liable only where the plaintiff can demonstrate that the employer knew or should have known of the harassment and failed to take

11

appropriate remedial action." (citing *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001))); *Courtney v. Landair Transp., Inc.*, 227 F.3d 559, 564-65 (6th Cir. 2000)).

Defendant reacted appropriately to the complaint of harassment when its management investigated each incident that Plaintiff brought to its attention and acted appropriately.  The company had an anti-harassment policy and a notice of its ethics hotline posted in the restaurant. Plaintiff did not avail himself of the company procedures for addressing his allegations, but instead allegedly informed Pannell of some but not all of his allegations before proceeding directly to filing a harassment charge with an outside agency.  Upon learning of the harassment charge, the company initiated a proper investigation.   Although concluding that no sexual harassment had taken place, Defendant transferred Carnes to another Burger King restaurant and placed both Carnes and Pannell on Performance Improvement Plans to ensure that Carnes did not repeat his conduct and that Pannell investigated every worker complaint adequately.  Plaintiff does not allege that any sexual harassment occurred after Defendant's actions.  There is thus no inappropriate response manifesting indifference or unreasonableness by Defendant.  Plaintiff's hostile work environment claim therefore fails.

Defendant also argues that it is similarly entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff again cannot establish a *prima facie* case.  Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  In order to establish a *prima facie* case of retaliation under this statutory provision, Plaintiff must prove that

12

> (1) he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.

*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 344 (6th Cir. 2008) (citing *Morris v. Oldham Cnty. Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000)). *See also Wierengo*, 580 F. App'x at 372. Defendant seeks summary judgment on the grounds that Plaintiff cannot satisfy the fourth prong.

Plaintiff presents indirect evidence of retaliation. When a plaintiff offers such circumstantial evidence of retaliation, courts employ the *McDonnell Douglas* burden-shifting framework. The Sixth Circuit has explained:

> Under this framework, the plaintiff bears the initial burden to establish a prima facie case of retaliation. If the plaintiff succeeds in making out the elements of a prima facie case, the burden of production shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the defendants' proffered reason was not the true reason for the employment decision. Although the burden of production shifts between the parties, the burden of persuasion remains on the plaintiff.

*Goodsite v. Norfolk S. Ry. Co.*, 573 F. App'x 572, 582 (6th Cir. 2014) (citation omitted).

He argues that after he reported Carnes' conduct to Vincent Pannell and Tony Diaz and after he filed a discrimination charge with the Ohio Civil Rights Commission, he suffered a reduction in hours, was written up for previously ignored tardiness and was ultimately terminated from his employment. None of these incidents establish the casual connection prong.

It is well settled that a written reprimand "is not a materially adverse employment action unless it is accompanied by a loss such as demotion or salary reduction." *Agrawal v. Montemagno*, 574 F. App'x 570, 576 (6th Cir. 2014). *See also Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013); *Jones v. Butler Metro. Hous. Auth.*, 40 F. App'x 131, 137 (6th Cir. 2002).

13

Because Plaintiff has failed to present evidence of accompanying or related lowered pay, demotion, or similar consequent action, the written reprimands he received cannot establish the necessary causal connection.

Plaintiff is equally unsuccessful in establishing the causal connection in asserting that he sustained a loss in hours.  The record arguably does not support that Defendant cut Plaintiff's hours, and there is no evidence of the requisite but-for causation between any reduction and Plaintiff's protected activity.

Finally, Plaintiff has failed to offer evidence indicating that there is any link between his March 2013 complaint or complaints of harassment and his September 2013 termination.  Unless immediate, temporal proximity must be "coupled with other indicia of retaliatory conduct" to give rise to a causal inference.  *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588–89, 595 (6th Cir. 2009).  The Sixth Circuit has explained, however, that its "precedent is clear that mere temporal proximity between an assertion of Title VII rights and a materially adverse action, without other indicia of retaliatory conduct, is not sufficient to establish the causal connection element of a retaliation claim." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 770 (6th Cir. 2008).  Here, there is a notable lapse of time between Plaintiff charge and the adverse action of his termination.  This gap does not present temporal proximity to suggest the requisite causation, and Plaintiff has failed to direct this Court to any other indicia of retaliatory conduct.  Plaintiff therefore has failed to offer evidence sufficient to raise an inference that his charge was the *likely* reason for his termination.  *See Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620, 627 (6th Cir. 2010) ("To demonstrate a causal connection between a materially adverse action and the exercise of protected rights, 'a plaintiff must proffer evidence sufficient to raise

14

the inference that [the] protected activity was the likely reason for the adverse action.' " (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007)). Consequently, the Court concludes that Plaintiff has failed to present evidence or raise a genuine issue of material fact related to the existence of a causal connection between his complaint to management or to the Ohio Civil Rights Commission and his subsequent separation from employment. There is no *prima facie* case of retaliation.

Even if this Court were to conclude that Plaintiff has presented a *prima facie* case of retaliation, Defendant is still entitled to summary judgment on this claim. As noted above, once a plaintiff meets the initial burden of establishing a *prima facie* case of retaliation, the burden shifts to the defendant to present a legitimate, non-discriminatory reason why the plaintiff suffered an adverse employment action. *Goodsite*, 573 F. App'x at 582. In accordance with this shifting of burdens, Defendant has pointed to a non-discriminatory reason for terminating Plaintiff's employment: his terrible attendance, which violated the company's attendance policy.

>Defendant's written attendance policy provides:
>
>Regular attendance is required to the Company's efficient operation and is a necessary condition of employment. Employees are expected to report to work as scheduled and on time. When employees are absent, the business and customers suffer, placing an undue burden on the business. Other employees must assume added workloads.
>
>Employees are expected to report to work as scheduled and on time.
>
>If it is impossible to report for work as scheduled, employees must call their Supervisor 3 hours before their starting time. If your supervisor or Restaurant Manager is unavailable, call your [Area Business Manager].
>
>. . .
>
>If you are unable to report for work as scheduled, employees must call their direct

15

> supervisor on duty no less than **3 hours** before their starting time.  Calling in is the responsibility of every employee who is absent.
>
> . . .
>
> Three absences without notifying the manager is considered a voluntary termination.
>
> Excessive Tardiness and absenteeism causes undue hardship on the business and can result in disciplinary action up to and including termination.

(ECF No. 25-6, at Page ID # 176-77.)

Defendant's Area Business Manager, Jacob Yaden, made the decision to terminate Plaintiff's employment on September 15, 2013.  On that day, Yaden was conducting an unannounced, random visit to the restaurant at which Plaintiff worked, which was set for a corporate inspection that same day.  Plaintiff showed up 45 minutes late to work.  Yaden was aware that Plaintiff had presented ongoing attendance issues, and Yaden had met with Plaintiff previously in 2013 to address Plaintiff's frequent tardiness and absenteeism issues.  When Plaintiff was 20 minutes late the day of the visit, Yaden contacted the company's human resources department to obtain authorization to terminate Plaintiff's employment.  Yaden obtained the authorization, and Plaintiff arrived for work approximately 25 minutes later and out of his uniform.  At that point, Yaden terminated Plaintiff's employment.  Yaden testified that he was not aware at that time that Plaintiff had filed a claim of sexual harassment, that he did not know Carnes, and that he did not know that Carnes had allegedly been involved in any misconduct.

Because Defendant has met its burden of production, the burden shifts to Plaintiff to demonstrate that the reason offered by the defense is pretexual.  *See Goodsite*, 573 F. App'x at

16

582. In order to prove that Defendant's proffered reason is pretexual, Plaintiff "must demonstrate that the proffered reason was (1) factually false, (2) did not actually motivate the discharge, or (3) was insufficient to warrant the discharge." *Id.* at 584 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), *as recognized in Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009). Plaintiff "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083. In other words, Plaintiff must offer evidence that "circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* at 1084.

Plaintiff has failed to meet his burden. His own testimony undercuts the argument that the proffered reason had no basis in fact. Plaintiff was often tardy or absent from work, and on the day he lost his job, he was an unexcused 45 minutes late.

Plaintiff also fails to show that the proffered reason did not actually motivate the adverse employment decision. Plaintiff attempts to meet his burden by relying on a cat's paw theory of liability. The Sixth Circuit has explained the theory:

> A cat's paw theory of liability is that "a biased subordinate, who lacks decision-making power, influence[d] the unbiased decision-maker to make an adverse employment decision, thereby hiding the subordinate's discriminatory intent." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 755 (6th Cir. 2012) (internal quotation marks and alteration omitted). There must be evidence of a " 'causal nexus' between the ultimate decisionmaker's decision to terminate the plaintiff and the supervisor's discriminatory animus." *Romans v. Mich. Dept. of Human Servs.*, 668 F.3d 826, 836 (6th Cir. 2012) (quoting *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 677 (6th Cir. 2008)).

*Sami v. Detroit Med. Ctr.*, No. 14-1119, 2014 WL 7139550, at *6 (6th Cir. Dec. 16, 2014).

Plaintiff's theory is that Pannell influenced Yaden's decision to discharge Plaintiff

17

This Court will assume for the sake of argument that the cat's paw causation standard applies to the instant Title VII retaliation claim. *See Goodsite*, 573 F. App'x at 585-86. Under this analysis, Plaintiff has failed to show that any retaliatory animus motivated his dismissal. Although Plaintiff asserts otherwise in his briefing without reference to supporting evidence, nothing in the record suggests that Yaden took input from managers who had knowledge of Plaintiff's protected activity when Yaden made the termination decision. Nothing in the record indicates that, at the time he decided to fire Plaintiff, Yaden knew that Plaintiff had previously filed the sexual harassment complaint. Nothing in the record therefore suggests (or presents a genuine dispute of fact over whether) Yaden functioned as a mere rubber stamp for another's decision to terminate Plaintiff's employment, which removes this case from application of the cat's paw theory that Plaintiff seeks to invoke. *See id.* at 586. As the Sixth Circuit has noted,

> [t]o prevail on this theory, a plaintiff must show that the decisionmaker relied on discriminatory information from the biased supervisor. If the ultimate decision was based on an independent investigation and the plaintiff cannot establish that the supervisor's discriminatory animus influenced the decision, there is no causal connection. If the wrongful actions were merely a motivating factor in the termination decision, the claim fails as a matter of law.

*Id.* (citations omitted). There is no evidence that Pannell held a discriminatory or retaliatory animus toward Plaintiff. There is no evidence that Yaden discussed his decision to terminate Plaintiff's employment with Pannell; Yaden had not even told Pannell that he was going to fire Plaintiff prior to doing so. There is no evidence that Yaden did not come to his own conclusion as part of his independent efforts. There is thus no evidence that Plaintiff's violation of the attendance policy did not actually motivate his dismissal.

Finally, Plaintiff fails to show that the proffered reason for termination was insufficient to motivate the adverse employment action.  The Sixth Circuit has held that following neutral company policy is a legitimate, nondiscriminatory reason for terminating an employee's employment.  *Wierengo*, 580 F. App'x at  375.  Moreover, Plaintiff has failed to show that he was treated less favorably than any similarly situated co-worker after engaging in protected behavior.  Pointing to other employees who were allegedly routinely tardy, Plaintiff argues in his memorandum in opposition that "Defendant has not presented evidence that all of these employees notified supervisors that they were going to be late on all or even a majority of the occasions that they were tardy." (ECF No. 30, at page ID # 408.)  This argument impermissibly shifts the burden to Defendant.  Plaintiff has the burden to show that Defendant did not discipline other employees for conduct that was the same or substantially similar to his own, which means that it is Plaintiff's responsibility to show that these employees did not provide the mandated notice of tardiness or absenteeism yet evaded same or similar discipline than that Plaintiff incurred.  Plaintiff has not met that burden and instead invokes standards applicable for stating a claim under Federal Rule of Civil Procedure 12(b)(6).  The issue here is not whether Plaintiff has stated a claim, however, but whether he has evidence to prove that claim.  Because he does not, there is no material dispute that Defendant made a reasonably informed and considered decision based on a non-retaliatory reason for discharging Plaintiff, and no reasonable juror could find pretext.  Defendant is thus also entitled to summary judgment on Plaintiff's retaliation claim.

## IV.     Conclusion

For the foregoing reasons, the Court **DENIES** the request for oral argument and **GRANTS** Defendant's motion for summary judgment.  (ECF No. 25.)  The Clerk shall enter judgment accordingly and terminate this action on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

      /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE